# United States Court of Appeals for the Federal Circuit

05-1003


ABB, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Jerry P. Wiskin, Simons & Wiskin, of South Amboy, New Jersey, argued for plaintiff-appellant. On the brief was Philip Yale Simons.

Mikki Graves Walser, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, of Washington, DC; and, Barbara S. Williams, Attorney in Charge, International Trade Field Office, of New York, New York. Of counsel was Michael Heydrich, Attorney, Office of Assistant Chief Counsel, United States Customs and Border Protection.

Appealed from: United States Court of International Trade

Chief Judge Jane A. Restani

# United States Court of Appeals for the Federal Circuit

05-1003

ABB, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: August 16, 2005

_____

Before LOURIE, SCHALL, and BRYSON, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

ABB, Inc. ("ABB") appeals from the decision of the United States Court of International Trade sustaining the classification by the Bureau of Customs and Border Protection ("Customs") of certain imported underwater cables under the Harmonized Tariff Schedule of the United States ("HTSUS"), codified at 19 U.S.C. § 1202.  <u>ABB, Inc. v. United States</u>, 346 F. Supp. 2d 1357 (Ct. Int'l Trade 2004) ("<u>Decision on Appeal</u>"). We affirm.

## BACKGROUND

In 2002,[1] as part of a project to link the New England power grid to the Long Island power grid, ABB imported a fiber optic cable and a pair of high-voltage electric

---

[1] All references to the HTSUS are to the 2002 edition.

cables to be buried in the sea floor of Long Island Sound. After importation, but prior to being deposited in an underwater trench, the three cables were manually bundled together with steel straps on a cable-laying boat in order to efficiently lay the cables along a 24-mile route in a single trip. Due to their considerable size, it was not feasible to enclose all three cables within a common sheath at the time of manufacture.

Customs classified the electric cables[2] under HTSUS subheading 8544.60.40, dutiable at 3.5% ad valorem, whereas the fiber optic cable[3] was classified under subheading 8544.70.00, duty-free. The relevant HTSUS provisions are as follows:

| 8544 | Insulated (including enameled or anodized) wire, cable (including coaxial cable) and other insulated electric conductors, whether or not fitted with connectors; optical fiber cables, made up of individually sheathed fibers, whether or not assembled with electric conductors or fitted with connectors: |
|---|---|
| 8544.60.40 | Other electric conductors, for a voltage exceeding 1,000 V . . . Of copper |
| 8544.70.00 | Optical fiber cables |

HTSUS Section XVI, Chapter 85, heading 8544 (2002) (emphasis added). Disagreeing with Customs' classification of the electric cables, ABB filed a protest pursuant to 19

---

[2] Each electric cable, manufactured by ABB High Voltage Cables AB in Karlskrona, Sweden, "consists of a copper conductor surrounded, in succeeding order, by plastic insulation, water sealing tape, a metallic shield, an inner jacket, tensile armoring, and an outer jacket." Decision on Appeal, 346 F. Supp. 2d at 1359 (citations omitted).

[3] The fiber optic cable, manufactured by Ericsson Network Technologies AB in Hudiksvall, Sweden, contains "optical fibers individually sheathed with acrylate and arranged around a slotted polyethylene core," wherein "[t]he arrangement of optical fibers is protected by an inner polyethylene jacket, a water-proof copper tube, a double layer of steel wire armor, and an outer polyethylene jacket." Decision on Appeal, 346 F. Supp. 2d at 1359 (citations omitted).

U.S.C. § 1514. Because the fiber optic and electric cables were bundled together after importation, ABB claimed that all three cables had been imported as the unassembled[4] pieces of a single "optical fiber cable[ ] . . . assembled with electric conductors" that was classifiable under subheading 8544.70.00, duty-free. Customs denied the protest, after which ABB challenged the classification in the Court of International Trade.

On cross-motions for summary judgment, the court sustained Customs' classification of the electric cables separately from the fiber optic cable, holding that fastening articles together for efficient handling did not, by itself, constitute an "assembly." In rejecting ABB's argument that the three cables had been imported as the unassembled pieces of a single fiber optic cable "assembled with electric conductors," the court did not view the cable bundle formed after importation to have been "assembled" within the common meaning of that word, reasoning that: (1) the bundling procedure was not a standardized operation involving little or no discretion, as it was project-specific and subject to the discretion of those who oversaw the operation; and (2) each of the three cables was a "distinct and separate commercial entity," having been fully-manufactured and functional prior to importation. For similar reasons, the court rejected ABB's alternative argument that the cable bundle was a "composite machine" classifiable under subheading 8544.70.00. This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

---

[4] Although "[i]t is well settled law that merchandise is classified according to its condition when imported," Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994), HTSUS General Rule of Interpretation ("GRI") 2(a) provides that any reference in a heading to an article shall be taken to include a reference to that article entered unassembled. The GRIs, which are applied in numerical order, govern the proper classification of merchandise under the HTSUS. Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999).

DISCUSSION

We review the grant of summary judgment by the Court of International Trade <u>de novo</u>. <u>Gen. Elec. Co. v. United States</u>, 247 F.3d 1231, 1234 (Fed. Cir. 2001). Because the material facts are not in dispute, the disposition of this appeal turns on a determination of the proper meaning and scope of the relevant tariff provisions, which is an issue of law over which we exercise "complete and independent review." <u>Pillowtex Corp. v. United States</u>, 171 F.3d 1370, 1373 (Fed. Cir. 1999).

On appeal, ABB maintains that the fiber optic cable and the electric cables should all have been classified under subheading 8544.70.00 as the "unassembled" pieces of a single "optical fiber cable[ ] . . . assembled with electric conductors" that was "assembled" after importation through a bundling operation. We disagree.

The mere bundling of certain articles after importation does not necessarily amount to an "assembly" of another article alleged to have been imported in an "unassembled" condition. A review of the definition of "assemble" is instructive in this regard. Because the term "assemble" is not defined in the HTSUS, "its common or dictionary meaning" governs. <u>Rohm & Haas Co. v. United States</u>, 727 F.2d 1095, 1097 (Fed. Cir. 1984). According to <u>Webster's Third New International Dictionary</u> 131 (1993), "assemble" means "to fit together various <u>parts</u> of [sic] so as to make into an operative whole." (emphasis added).

Here, none of the three cables is a "part," and thus their bundling[5] cannot constitute an "assembly." For tariff classification purposes, the mere fact that a plurality

---

[5] That the cables are not "parts" is dispositive of the issue before us. Accordingly, we need not decide whether a "bundling" constitutes a "fit[ting] together" within the definition of "assemble."

of articles may be used together does not necessarily make each article in the plurality a constituent "part" of a single article. See United States v. Willoughby Camera Stores, Inc., 21 C.C.P.A. 322, 324 (1933). Rather, where an article "performs its separate function without loss of any of its essential characteristics," and, whether separate or joined, is "complete in itself," that article is a "distinct and separate commercial entity" and not a "part." Willoughby Camera, 21 C.C.P.A. at 325 (internal quotation marks omitted). In the present case, each of the three cables possesses the characteristics of a "distinct and separate commercial entity": each cable is a finished article and is capable of functioning independently of the other two cables, such that each cable could have been laid in separate trips across Long Island Sound without loss of function.[6] Because each cable is not a "part," but rather a "distinct and separate commercial entity," there is no principled basis for classifying the three cables as a single "assembled" article merely because, after importation, they are bundled together for logistical convenience. Therefore, Customs' individualized classification of each cable in the bundle was proper.

In the alternative, ABB argues that the three cables may be classified under subheading 8544.70.00 as a "composite machine" pursuant to HTSUS Section XVI, Note 3.[7] This argument has no merit.

---

[6] Rather than being due to technical considerations, ABB emphasizes throughout its briefs that the bundling was necessitated by the need for efficiency and accuracy during installation, i.e., "[t]o eliminate multiple trips across Long Island Sound and assure an effective burial." Appellant's Br. at 5.

[7] Note 3 of Section XVI provides that:

Unless the context otherwise requires, composite machines consisting of two or more machines fitted together to form a whole and other machines

A "composite machine," as set forth in Note 3, "consist[s] of two or more machines fitted together to form a whole." HTSUS Section XVI, Note 3 (2002). For guidance in interpreting Section Notes, a court may consult the corresponding Explanatory Notes[8] to the HTSUS, which are not legally binding, but are generally indicative of the proper interpretation of the HTSUS. See Carl Zeiss, 195 F.3d at 1378 n.1. According to the Explanatory Notes for Note 3, a purported combination of machines "should not be taken to be fitted together to form a whole unless the machines are designed to be permanently attached either to each other or to a common base, frame, housing, etc." Explanatory Notes at 1388. Because each cable has been manufactured as a separate, stand-alone product, with no indication of having been "designed to be permanently attached" to another cable, we reject ABB's contention that the cable bundle is a "composite machine."

We have considered ABB's other arguments and conclude that they are either unpersuasive or unnecessary for resolution of this appeal.

CONCLUSION

---

designed for the purpose of performing two or more complementary or alternative functions are to be classified as if consisting only of that component or as being that machine which performs the principal function.

HTSUS Section XVI, Note 3 (2002). Section Notes "are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202." Park B. Smith, Ltd. v. United States, 347 F.3d 922, 926 (Fed. Cir. 2003).

Because the Court of International Trade did not err in concluding that Customs correctly classified the cables at issue, we accordingly affirm.

<u>AFFIRMED</u>

---

[8] Customs Co-operation Council, <u>Harmonized Commodity Description and Coding System: Explanatory Notes</u> (3d ed. 2002).