**Slip Op. 06-128**

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td> </td><td>:</td><td></td></tr>
<tr><td><strong>MICHAEL SIMON DESIGN, INC.,</strong></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td><strong>Plaintiff,</strong></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td><strong>v.</strong></td><td>:</td><td><strong>Court No. 04-00537</strong></td></tr>
<tr><td></td><td>:</td><td><strong>Before: Judge Judith M. Barzilay</strong></td></tr>
<tr><td><strong>UNITED STATES,</strong></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td><strong>Defendant.</strong></td><td>:</td><td></td></tr>
<tr><td> </td><td>:</td><td></td></tr>
</table>

## OPINION

[Upon classification of knitted cardigans, knitted blouses, and woven ladies shirts, summary judgment granted on certain items for the plaintiff and on certain items for the defendant.]

Dated: August 24, 2006

*Barnes, Richardson & Colburn* (*Alan Goggins*) for the plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Amy M. Rubin*); *Sheryl A. French*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of counsel, for the defendant.

**BARZILAY, JUDGE:** In this case, the plaintiff importer challenges a classification decision by the Bureau of Customs and Border Protection of the United States Department of Homeland Security ("Customs" or "Government") classifying certain articles of apparel as either "[s]weaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted" under heading 6110 or "women's or girls' blouses, shirts and shirt-blouses" under heading 6206 of the Harmonized Tariff Schedule of the United States 2003 ("HTSUS"),

19 U.S.C. § 1202. Compl. ¶¶ 6,8. Plaintiff contests Customs' position that heading 9505 excludes all utilitarian items in light of the recently amended Explanatory Notes to heading 9505, HTSUS, and claims that the items at issue should have been correctly classified under heading 9505 as festive articles. For the reasons discussed below, the court grants summary judgment for Plaintiff with respect to some items and summary judgment for Defendant with respect to others.

## BACKGROUND

Plaintiff Michael Simon Design, Inc. ("Michael Simon"), designs and imports knitwear into the United States for resale. In July 2003, Michael Simon imported apparel identified on commercial invoices as "knitted cardigans," "knitted blouses," and "woven ladies shirts." Joint Statement of Material Facts Not in Dispute ("JS") ¶¶ 4-5. The imported shipment contained sixteen different styles of sweaters. JS ¶ 6. Customs classified thirteen styles under subheading 6110.90.90, HTSUS, subject to a 6.0% *ad valorem* duty, and classified one style under subheading 6206.30.3040, HTSUS, subject to a 15.5% *ad valorem* duty. JS ¶¶ 11, 15, 24, 30, 38, 44, 49, 53, 54, 62, 66; *see* Protest, June 1, 2004. Two other styles were subject to *ad valorem* duties, but their classifications are not in dispute. JS ¶ 7.

Michael Simon filed a timely protest with Customs pursuant to 19 U.S.C. § 1514 to contest fourteen of the HTSUS classifications. JS ¶ 2. Specifically, Plaintiff maintained that the merchandise at issue should have been classified as "festive articles" under heading 9505, subject to duty-free treatment, and not under headings in Chapters 61 and 62 of the HTSUS. *See* Protest, June 1, 2004. Customs denied the protest providing the following short explanation: "Articles of fancy dress in HTSUS Chapt.s [sic] 61 & 62 are excluded from classification as festive, as per chapt. [sic] 95, note 1(e)." *See* Protest, June 1, 2004.

In May 2003, the World Customs Organization ("WCO"), in which the United States is a participating member, amended the Explanatory Note to heading 9505. *See Amendment of the Explanatory Note to Heading 95.05*, *Annex M/10*, May 31, 2003, http://hotdocs.usitc.gov/tata/ N_xxx/Ncxxx/NC0730B2%20Part%20II.pdf (last visited Aug. 23, 2006). The amended Explanatory Note to heading 9505, HTSUS, ("amended EN 95.05") explicitly excludes apparel from "festive articles."[1] *See Amendment of the Explanatory Note to Heading 95.05*. The amendments became effective on August 1, 2003, after the date of the merchandise's entry in this case. *See* World Customs Organization, International Convention on the Harmonized and Commodity Description and Coding System, art. 8, sec. 2, June 14, 1983, *available at* www.wcoomd.org/ie/EN/Topics_Issues/HarmonizedSystem/Hsconve2.pdf (last visited Aug. 23, 2006).

On this appeal, Michael Simon claims that all the apparel at issue should be classified as "festive articles" under HTSUS heading 9505. Pl.'s Br. 16-19. Plaintiff argues that the application of the amended EN 95.05 to exclude articles containing festive motifs from heading 9505 would contravene a body of case law that explicitly includes "utilitarian" articles within the scope of "festive articles." Pl.'s Br. 24-26. Customs, on the other hand, argues that heading 9505 was never meant to encompass the apparel at issue, as illuminated by the amended EN 95.05. Def.'s Br. 5. Alternatively, Customs claims that if heading 9505 does encompass the apparel at issue, six of the sweaters fail to satisfy the test for "festive articles." Def.'s Br. 21.

---

[1]In relevant parts, the amended EN 95.05 reads: "The heading also **excludes** articles that contain a festive design, decoration, emblem or motif and have a utilitarian function, e.g. tableware, kitchenware, toilet  articles, carpets and other textile floor coverings, apparel, bed linen, table linen, toilet linen, kitchen linen." *Amendment of the Explanatory Note to Heading 95.05*.

Michael Simon timely filed suit in this Court pursuant to 19 U.S.C. § 1515(a) (2000) and 28 U.S.C. §§ 2632(b) and 2636(a) (2000). *See* JS ¶ 2. This Court has exclusive jurisdiction over this case pursuant to 28 U.S.C. § 1581(a); *see Park B. Smith v. United States*, 347 F.3d 922, 924 (Fed. Cir. 2003).

### SUMMARY JUDGMENT AND STANDARD OF REVIEW

In this case, both parties have filed for summary judgment. "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In classification cases, "summary judgment is appropriate when there is no genuine dispute as to . . . what the merchandise is. . . . or as to its use." *Ero Indus., Inc. v. United States*, 24 CIT 1175, 1179, 118 F. Supp. 2d. 1356, 1359-60 (2000).

"Determining whether merchandise comes within a particular tariff provision, as properly interpreted, is a question of fact." *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995) (citation omitted). By statute, Customs' factual determination is presumed to be

correct. *Id.* (citing 28 U.S.C. § 2639(a)(1) (1988)).[2] Consequently, "the party challenging the classification . . . bears the burden of proof." *Id.* (citations omitted); *see Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988) (holding that parties moving for summary judgment bear burden of demonstrating that there are no genuine issues of material fact in dispute). The court's task is to "'determine whether there are any factual disputes that are material to the resolution of the action.'" *Sea-Land Serv., Inc. v. United States*, 23 CIT 679, 684, 69 F. Supp. 2d 1371, 1375 (1999) (quoting *Phone-Mate, Inc., v. United States*, 12 CIT, 575, 577, 690 F. Supp. 1048, 1050 (1988)), *aff'd*, 239 F.3d 1366 (Fed. Cir. 2001).

The Court reviews classification cases *de novo* pursuant to 28 U.S.C. § 2640(a) (2000). *Filmtec Corp. v. United States*, 27 CIT __, __, 293 F. Supp. 2d 1364, 1367 (2003). The analysis of a Customs classification involves two steps: "first, [the court] construe[s] the relevant classification headings; and second, [it] determine[s] under which of the properly construed tariff terms the merchandise at issue falls." *Id.* (citations omitted) (second, third, & fourth brackets in original); *see Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423, 1425-26 (Fed. Cir. 1997). Thus, when there are no contested factual issues, the "propriety of the summary judgment turns on the proper construction of the HTSUS, which is a question of law" subject to *de novo* review. *Clarendon Mktg., Inc. v. United States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998) (citation

---

[2] This subsection provides:

(a)(1) Except as provided in paragraph (2) of this subsection, in any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision.

28 U.S.C. § 2639(a)(1).

omitted).

Customs argues that its long-held position that heading 9505, HTSUS, excludes items whose primary function is utilitarian is entitled to deference in light of the amended EN 95.05. Def.'s Br. 16-17 (citing HQ 955239 (Feb. 28, 1994)). Indeed, agencies charged with applying a statute "necessarily make all sorts of interpretive choices, and . . . 'well-reasoned views of the agencies implementing a statute "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."'" *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))). As the Supreme Court in *Skidmore* stated that:

> while not controlling upon the courts by reason of their authority, . . . . [t]he weight of [the agency rulings] . . . in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore*, 323 U.S. at 140. Based on this principle, the Federal Circuit and this Court have afforded *Skidmore* deference to Customs' position in classification cases where Customs has issued rulings. *See, e.g.*, *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1354-55 (Fed. Cir. 2003) (affording *Skidmore* deference to Customs' ruling); *Hartog Foods Int'l., Inc. v. United States*, 291 F.3d 789, 791 (Fed. Cir. 2002) (extending no *Skidmore* deference to Customs' position "because Customs denied [the] protest without an official ruling"); *Dolly, Inc. v. United States*, 27 CIT __, __, 293 F. Supp. 2d. 1340, 1342 (2003) (same). *But see Structural Indus., Inc. v. United States*, 356 F.3d 1366, 1370 (Fed. Cir. 2004) (withholding *Skidmore* deference because Customs ruling was not made pursuant to "deliberative notice-and-comment" process and because Customs failed to follow consistent pattern of rulings). In addition, the Federal Circuit

has afforded *Skidmore* deference to a Customs' position in a case where Customs "issued no formal decision when it classified [the subject] merchandise, and proffered no analysis until [the] litigation." *Park B. Smith*, 347 F.3d at 925.

## DISCUSSION

### 1.  Rules for Classification of Goods

"The proper classification of merchandise entering the United States is directed by the General Rules of Interpretation ("GRIs") of the HTSUS and the Additional United States Rules of Interpretation." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998); *see Pillsbury Co. v. United States*, 431 F.3d 1377, 1379 (Fed. Cir. 2005); *Fujitsu Am., Inc. v. United States*, 422 F.3d 1364, 1366 (Fed. Cir. 2005).  "The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Orlando Food*, 140 F.3d at 1439.  Under GRI 1, "[a] classification analysis begins, as it must, with the language of the headings." *Id.* at 1440.  In pertinent part, GRI 1 states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS.  In fact, "Section and Chapter Notes are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202." *Park B. Smith*, 347 F.3d at 926 (citing *Libas, Ltd. v. United States*, 193 F.3d 1361, 1364 (Fed. Cir. 1999)).  The GRIs are applied in numerical order.  *See ABB, Inc. v. United States*, 421 F.3d 1274, 1276 n.4 (Fed. Cir. 2005) (citing *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999)).  Additionally, when imported items are "prima facie [sic] classifiable under more than one heading, the [HTSUS's] General Rules of Interpretation determine the outcome." *Russ*

*Berrie & Co. v. United States*, 381 F.3d 1334, 1337 (Fed. Cir. 2004). Thus, the "proper scope of a classification in the HTSUS is an issue of statutory interpretation." *Bauerhin Techs. Ltd. P'ship v. United States*, 110 F.3d 774, 776 (Fed. Cir.1997).

"It is a general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute." *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999) (citation omitted). If the "statutory language of [a] tariff classification is ambiguous," the court may use various "aids in construing the statute and disclosing legislative intent." *Celestaire, Inc. v. United States*, 20 CIT 619, 623, 928 F.Supp. 1174, 1178 (1996) (citation omitted), *aff'd*, 120 F.3d 1232 (Fed. Cir. 1997). Such aids, for example, include "standard canons of statutory construction [or] legislative ratification of prior judicial construction." *Id.* (citations omitted). Additionally, the court may construe HTSUS terms "according to their common and commercial meaning" if such construction would not contravene legislative intent. *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1352 (Fed. Cir. 2000) (citation omitted).

Finally, "a court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings." *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citation omitted); *see Motorola, Inc. v. United States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006) (noting that ENs are "instructive, but not binding."); *ABB, Inc.*, 421 F.3d at 1277 (same); *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (same) (citing *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992)).

### 2. Classification of the Merchandise in Question

A. Some Apparel at Issue Is *Prima Facie* Classifiable Under Heading 9505

Heading 9505 covers "[f]estive, carnival or other entertainment articles, including magic tricks and practical joke articles; parts and accessories thereof." Heading 9505, HTSUS (2003). The Federal Circuit has interpreted the scope and meaning of heading 9505 in *Park B. Smith, Ltd. v. United States*, laying out a two-prong test for determining whether a particular article falls into the heading. 347 F.3d at 927. "[C]lassification as a 'festive article' under Chapter 95 requires that the article satisfy two criteria: (1) it must be closely associated with a festive occasion and (2) the article [be] used or displayed principally during that festive occasion." *Id.* (citing *Midwest*, 122 F.3d at 1429). Additionally, to quality as "festive articles," items must be "'closely associated with a festive occasion'" to the degree that "'the physical appearance of an article is so intrinsically linked to a festive occasion that its use during other time periods would be *aberrant*.'" *Id.* (quoting *Park B. Smith, Ltd. v. United States*, 25 CIT 506, 509 (2001) (not reported in F. Supp.)) (emphasis added). In general, the Federal Circuit has held that utilitarian items can be classified under the "festive articles" heading. *See Park B. Smith*, 347 F.3d at 928 (finding that heading 9505 includes utilitarian articles such as napkins, placemats, and rugs with Halloween and Christmas symbols on them); *Midwest*, 122 F.3d at 1429 (finding that prior edition of the Explanatory Notes did not exclude utilitarian items from falling within scope of "festive articles" under heading 9505, HTSUS).

Defendant argues that neither *Park B. Smith, Midwest*, nor other case law has declared "festive articles" an unambiguous term and that the court should therefore refer to the amended EN 95.05 to clarify any ambiguity. Def.'s Br. 10-11. While conceding that the Explanatory

Notes are not legally binding on this court, Customs maintains that the sweaters at issue should be categorically excluded from heading 9505, HTSUS, because the amended EN 95.05 clarifies ambiguity by excluding "articles that contain a festive design, decoration, emblem or motif and have a utilitarian function, e.g. . . . apparel."[3] Def's Br. 5, 14. In addition, Customs seeks *Skidmore* deference for its position, claiming that it has "consistently interpreted the tariff term 'festive articles' as excluding utilitarian articles." Def.'s Br. 16-17 (citing *e.g.*, HQ 958405 (Nov. 7, 1996); HQ 955239 (Feb. 28, 1994)).

However, Customs' position in this case deserves no *Skidmore* deference. First, Customs denied Plaintiff's protest without an official ruling. *See* Pl.'s Mem. Opp'n Def.'s Cross-Mot. Summ. J. 7; Def.'s Reply 8. In addition, even if Customs claims that it held a consistent position with respect to the scope of heading 9505 in previous rulings, the Federal Circuit has rejected that position. Further, the Government has demonstrated an inconsistent position in this case. In the denial of protest, Customs did not state that the merchandise was excluded from heading 9505 because of the amended EN 95.05. *See* Protest, June 1, 2004. Indeed, the amendments were not yet in effect at that time. Instead, Customs denied Plaintiff's protest by stating that "articles of fancy dress in HTSUS chapt.s [sic] 61 & 62 are excluded from classification as festive, as per chapt. 95, Note 1(e). Original Customs decision reviewed & found to be correct."

---

[3] It should be noted that Defendant claims that the application of the amended EN 95.05 presented a novel issue because "no court has yet considered or applied the *current version* of the ENs to Heading 9505." Def.'s Br. 13-14. However, the Government briefed this issue before the Federal Circuit in *Russ Berrie*. *See* Brief for Appellee, 2004 WL 3768255, at *26, Russ Berrie & Co. v. United States, 381 F.3d 1334 (Fed. Cir. 2004) (No. 04-1084); Brief for Appellant, 2004 WL 3768254, at *18-19, Russ Berrie & Co. v. United States, 381 F.3d 1334 (Fed. Cir. 2004) (No. 04-1084). The Federal Circuit resolved the matter by using the rule of specificity to hold that Halloween and Christmas earring sets were classifiable as imitation jewelry, rather than "festive articles." *Russ Berrie*, 381 F.3d at 1336-37.

*Protest*, June 1, 2004.  In its brief, however, the Government did not argue that the apparel in question was fancy dress.  *See* Def.'s Br. 28.  This inconsistency weighs against giving Customs deference in its interpretation of heading 9505.  Thus, the court finds that Customs' position lacks the power to persuade.

The court's own analysis rejects the application of the amended EN 95.05 to the classification of merchandise in this case because the amended EN 95.05 contradicts the Federal Circuit's current interpretation of the scope of heading 9505.  While the term "festive articles" may be ambiguous in some respects as Defendant argues, it is not ambiguous with respect to encompassing utilitarian articles, since *Park B. Smith* and *Midwest* held, without qualification, that the term "festive articles" includes utilitarian articles.  *See Park B. Smith*, 347 F.3d at 928; *Midwest*, 122 F.3d at 1429.  Application of the amended EN 95.05 would categorically exclude items which have a "utilitarian function" from heading 9505, thereby precluding items such as earrings, table linens, mugs, and rugs from falling under that heading even though the Federal Circuit has ruled to the contrary.  *See Park B. Smith*, 347 F.3d at 927-28; *Midwest*, 122 F.3d at 1429.  Meanwhile, the Federal Circuit's current interpretation of the meaning of the term "festive articles" controls.[4]  *See PAM, S.p.A. v. United States*, 28 CIT __, __, 347 F. Supp. 2d. 1362, 1370

---

[4] Even though the Explanatory Notes are persuasive and not controlling, the court's task would be more difficult had the timing been different in this case as one of the Federal Circuit's key rulings cited to the previous edition of the Explanatory Notes in its analysis.  *See Midwest*, 122 F.3d at 1429 (citing prior editions of the Explanatory Notes, which did not specifically exclude utilitarian items, to construe term "festive articles").  To use the Explanatory Notes to contradict or change the scope of a term already defined by legally binding sources amounts to legal error.  *See Motorola, Inc.*, 436 F.3d at 1361 (stating that "[b]ecause the [trial] court used the Explanatory Note for guidance as to the meaning of a definitional term and did not treat the Explanatory Note as setting forth an additional definitional requirement, . . . the trial court did not commit legal error by referring to the Explanatory Note"); *Lonza, Inc., v. United States*, 46 F.3d 1098, 1109 n.29 (Fed. Cir. 1995) ("To the extent the definition . . . found in the *Explanatory*

(2004) ("This Court must apply the binding precedent of the Court of Appeals for the Federal Circuit.").

*1. Christmas and Halloween Motif Items Are* Prima Facie *Classifiable Under Heading 9505*

The court has examined images of the following sweaters and agrees with the parties that their motifs are festive in that they are closely associated with a festive occasion and would be principally displayed during those festive occasions:

1. Style Numbers E093309 and E093309W (W designates different size): sweater with beaded nativity scene identified as "Silent Night LS CD-RC," "Silent Night," "Womens Silent Night Cardigan," "Silent Night LS cardigan," or "Silent Card" on invoices and purchase orders. JS ¶ 14.

2. Style Numbers E093100 and E093100W (W designates different size): sweater shell with beaded starry night scene named "Silent Night Shell RC," "Silent Night Shell," "Womens Silent Night Shell," or "Silent Shell" on invoices and purchase orders. JS ¶ 16.

3. Style Number E093215: sweater with large beaded angel identified as "Angel LS P/O RC," "Angel," or Angel ls po" on invoices and purchase orders. JS ¶ 27.

4. Style Number K083300: sweater with jack-o-lantern, bat, candy corn, and black cat motifs identified as "Halloween Party Sweater" or "Girl's Halloween Party Cardiga[n]" on invoices and purchase orders. JS ¶ 43.

5. Style Number K083301: sweater with witch, devil, jack-o-lantern, candy corn, and spider web motifs identified as "Trick/Treat CRD" or "Girl's Trick or Treat Cardigan" on invoices and purchase orders. JS ¶ 48.

6. Style Number E093302: sweater with Christmas tree motif identified as"OH XMS TREE 3/4 CD-RC," "Oh Xmas Tree," or "Oh Xmas Tree crd" on invoices and purchase orders. JS ¶ 34.

The parties do not contest that these items satisfy the legal test for "festive articles" classification

---

*Notes* conflicts with the court's determination, that definition is rejected.").

set forth in *Midwest* and *Park B. Smith*. Def.'s Br. 21-22; Pl.'s Br. 12. The articles of apparel

with Christmas motifs are therefore *prima facie* classifiable under subheading 9505.10.5020,

HTSUS, encompassing "[f]estive, carnival or other entertainment articles, including magic tricks

and practical joke articles; parts and accessories thereof: Articles for Christmas festivities and

parts and accessories thereof: . . . Other . . . Other . . . Other." Subheading 9505.10.5020,

HTSUS. The Halloween motif articles of apparel are classifiable under subheading

9505.90.6000, covering "[f]estive, carnival or other entertainment articles, including magic tricks

and practical joke articles; parts and accessories thereof: . . . Other: . . . Other." Subheading

9505.90.6000, HTSUS. Defendant disputes the "'festive' nature" of six other items. Def.'s Br.

21.

    *2. Spider Motif Sweater*

Defendant argues that style number E08325 (Women's Black Widow Sweater) is not a

"festive article" because its design fails to meet the "festive article" test. *See* Def.'s Br. 21-22.

Item number E08325 is a sweater available in black or "pearl." *See* JS Ex. 1. The sweater has

web-like lacing around the sleeves and collar. The black version of the sweater has an image of a

small white spider dangling down from the collar, while the "pearl" sweater has the same image

in black and is identified as "BLACK WIDOW 3/4 SLV. PULLOVER" on marketing materials.

*See* JS Ex. 1; JS ¶ 51.

Plaintiff offers examples where Customs has found spiders or spider webs to constitute

"festive" motifs. *See* Pl.'s Br. 14-15; NY J84370 (May 7, 2003) (ruling that orange and black

candle holder with spider motif falls under 9505); NY F83636 (Mar. 20, 2000) (ruling that

plastic illuminated spider falls under 9505); NY 874361 (May 29, 1992) (ruling that kit with

polyester spider web and plastic spiders falls under 9505). Further, Michael Petito, the founder and current President of Michael Simon Design, stated in his affidavit that item E08325 was marketed as part of a Halloween apparel collection and that he "would not expect the ultimate purchasers of this pullover to wear it at any other time of the year other than on or around Halloween." Petito Aff. ¶ 11.

Defendant counters that while a spider may be a Halloween symbol, a spider motif alone on an article does not "render[] that article *prima facie* classifiable as a 'festive article.'" Def.'s Br. 26. However, the Federal Circuit "ruled that articles with *symbolic* content associated with a particular recognized holiday, such as Christmas trees, Halloween jack-o-lanterns, or bunnies for Easter, are festive articles." *Park B. Smith*, 347 F.3d at 929 (emphasis added). Thus, the sweater at issue with distinctly recognizable Halloween symbols (spider and web) meets the "closely associated" requirement of the two-part test. *See id.* at 927. In addition, Plaintiff supplied sufficient evidence that the item at issue is sold exclusively during the festive occasion for Halloween and that it is used principally during Halloween. *See* Petito Aff. ¶ 11. Item number E08325 (Women's Black Widow Sweater) is therefore *prima facie* classifiable under subheading 9505.90.6000, HTSUS.

### 3. Bat Motif Sweater

Defendant claims that item E08320 (Women's Elvira Sweater) also fails to satisfy the "festive article" test. Item E08320 is a sweater that comes in "lake" (blue) or "pearl" colored backgrounds with black trim around the collar, sleeves, and bottom of the sweater and is identified as "ELVIRA L/S PULLOVER" on marketing materials. JS. Ex. 1; JS ¶ 65. A black bat embellishes the top of the sweater. Customs has recognized that, similar to spiders, bats are

symbols associated with Halloween. *See, e.g.*, NY H89472 (Mar. 22, 2002) (ruling that candy bucket with bat motif falls under 9505); NY I88175 (Nov. 19, 2002) (ruling metal candle holders with bat motifs fall under 9505). Additionally, Mr. Petito stated that he did not expect purchasers of item E08320 to "wear it at any other time of the year other than on or around Halloween." Petito Aff. ¶ 13.

Customs argues that a bat motif alone is insufficient to place an item under heading 9505 because it is not intrinsically related to Halloween. *See* Def.'s Br. 21-22. However, as stated earlier, so long as an article carries symbolic content intrinsically related to a recognized holiday, the article is considered to be "closely associated" with that holiday. *See Park B. Smith*, 347 F.3d at 929 (emphasis added). Thus, an article with a distinctly recognizable and *prominent* Halloween symbol (bat) meets the "closely associated" requirement of the two-part test. *See id.* at 927. In addition, Plaintiffs supplied sufficient evidence that the item at issue is sold exclusively during the festive occasion for Halloween and that it is used principally during Halloween. *See* Petito Aff. ¶ 13. Item number E08320 (Women's Elvira Sweater) is therefore *prima facie* classifiable under subheading 9505.90.6000, HTSUS.

*4. Ghost Motif Sweater*

Item E08321 is a black sweater with the image of a ghost emblazoned on the front with white sequins and identified as "CASPER L/S PULLOVER" on marketing materials. JS Ex. 1; JS ¶ 69. The ghost is shaped like a floating sheet with a face. JS Ex. 1. Defendant argues that item E08321 fails to satisfy the "festive article" test because while ghosts are associated with Halloween, their use as motifs is not restricted to the holiday. *See* Def.'s Br. 24. Plaintiff, though, cites multiple Customs rulings finding ghosts to be a Halloween motif. *See e.g.*, NY

J80301 (Jan. 21, 2003) (ruling that metal lantern with ghost, jack-o-lantern, cat and bat motifs fall under HTSUS heading 9505); NY G89126 (May 8, 2001) (ruling that candle lampshade with ghost, cat, and jack-o-lantern motif falls under HTSUS heading 9505).  Mr. Petito also states that he did not expect purchasers of item E08321 to "wear it at any other time of the year than on or around Halloween."  Petito Aff. ¶ 14.

As with the bat and spider sweaters at issue, the court finds that the prominent ghost motif renders the sweater at issue a "festive" article.  The Federal Circuit ruled that pins and earrings with symbols such as "[s]nowmen decorated with holly, *ghosts*, and witches' and monsters' heads are symbols that are closely associated with the Christmas and Halloween holidays and are used principally on those occasions" and therefore are *prima facie* classifiable under HTSUS heading 9505.  *Russ Berrie*, 381 F.3d at 1336 (emphasis added).  Even though many of the Customs rulings to which Plaintiff cites refer to articles depicting ghost motifs displayed with other Halloween motifs, such as cats, bats, and jack-o-lanterns, the ghost motif alone is also intrinsically linked to Halloween.  *See, e.g.*, NY J80301; NY G89126.  After viewing a picture of item E08321, considering Mr. Petito's affidavit, and applicable law, the court finds that item E08321 is *prima facie* classifiable under subheading 9505.90.6000, HTSUS.

*5.  Black Cat Motifs Items*

Defendant argues that style numbers E08326, K083302, and FX83401 are not "festive articles" because the cat motifs do not satisfy the legal definition of "festive" as set forth by the courts.  Def.'s Br. 21-22.  E08326 is a sweater that comes in a "pearl" or "yam" colored

background with black trim, featuring two black cats arching their backs on the front[5] and identified as "CAT NIP 3/4 SLV. PULLOVER" on marketing materials. JS Ex. 1; JS ¶ 57. K083302 is a "lime green" sweater with pink cuffs and three black cats wearing pink collars identified as "CATWALK SWEATER" on marketing materials. JS Ex. 1; JS ¶ 59. FX83401 is a black shirt with four cats outlined in white identified as "Fraidy Cat Shirt" on marketing materials. JS Ex. 1; JS ¶ 61.

Plaintiff points out that Customs has found black cats to be a Halloween motif. Pl.'s Br. 15); *see also* NY J85257 (June 5, 2003) (ruling that battery operated, motion activated black cat that makes screeching noises classifiable under 9505); NY C84936 (Mar. 10, 1998) (ruling that wall hanging depicting black cat and jack-o-lantern classifiable under 9505). Additionally, Plaintiff submitted an affidavit from Mr. Petito stating that he would not expect a purchaser of item E08326, K083302, or FX83401 to wear the apparel "at any other time of the year than on or around Halloween." Petito Aff. ¶¶ 10, 12, 15, Nov. 21, 2005.

Customs reasons that while black cat motifs are "associated" with Halloween, they are not "*closely* associated *only* with Halloween," and use of those symbols at other times of the year would not be aberrant. Def.'s Br. 24. After examining pictures of the apparel in question, Mr. Petito's affidavit, and granting Customs the presumption of correctness in its factual determination of the apparel's classification pursuant to 28 U.S.C. § 2639(a)(1), the court finds that items E08326, K083302, and FX83401 are not *prima facie* classifiable under 9505. While black cats may be Halloween motifs, the particular images on the items at issue do not satisfy the

---

[5] While it can be a significant part of holiday motifs, both parties agree that the background color is irrelevant in this case. *See* Pl.'s Resp. Ct.'s Questions 6; Def.'s Resp. Ct.'s Questions 5.

first part of the *Midwest* test – i.e., they are not "closely associated with a festive occasion"– because they are not so *intrinsically* linked to Halloween that wearing those items at other times of the year would evoke thoughts of Halloween or seem aberrant.  *See Park B. Smith*, 347 F.3d at 927 (citations omitted).

B.  The Apparel at Issue Are *Prima Facie* Classifiable Under Headings 6110 & 6206

The parties do not contest that thirteen of the articles at issue are *prima facie* classifiable under headings 6110, HTSUS, and one article is *prima facie* classifiable under 6206, HTSUS. Heading 6110 covers "[s]weaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted."  Heading 6110, HTSUS.  Based on the relevant portions of the Joint Statement of Material Facts and the examination of the images of the apparel designated by the style numbers E093302, E093309, E093309W, E093100, E093100W, E093215, E08325, E08326, E08320, E08321, K083300, K083301, and K083302, the court finds that these articles are each knitted or crocheted sweaters or pullovers.  They are therefore *prima facie* classifiable under heading 6110, HTSUS.  Heading 6206 covers "[w]omen's or girls' blouses, shirts and shirt-blouses."  Heading 6206, HTSUS.  Having examined a picture of item FX83401 and determined that it is a woman's shirt, the court concludes that it is *prima facie* classifiable under heading 6206, HTSUS.

C.  Apparel Items *Prima Facie* Classifiable Under Heading 9505 Are Festive Articles Because of Section Notes from Section XI.

Having established that items E093302 (Oh Xmas Tree), E093309 (Womens Silent Night Cardigan), E093309W (Womens Silent Night Cardigan), E093100 (Womens Silent Night Shell), E093100W (Womens Silent Night Shell), E093215 (Angel), K083300 (Halloween Party

Sweater), K083301 (Girl's Trick or Treat Cardigan), E08325 (Black Widow 3/4 Slv. Pullover), E08320 (Elvira L/S Pullover), and E08321 (Casper L/S Pullover) are *prima facie* classifiable as "festive articles" under heading 9505 and as sweaters under headings 6110 or 6206, the court next turns to the relevant Chapter and Section notes pursuant to GRI 1. Chapter notes for Chapter 95 list specific items which should be excluded from the Chapter's scope. In relevant part, Note 1 states that "chapter [95] does not cover: . . . (e) Sports clothing or fancy dress, of textiles, of chapter 61 or 62." Chapter Note 1(e) 9505, HTSUS. The court in *Rubie's Costume* defined "fancy dress" as "a costume (as for a masquerade or party) departing from [currently] conventional style and usu. representing a fictional or historical character, an animal, the fancy of the wearer, or a particular occupation." *Rubie's Costume Co.*, 337 F.3d at 1356-57 (quoting *Rubie's Costume Co. v. United States*, 26 CIT 209, 216, 196 F. Supp. 2d 1320, 1327 (2002) (citing *Webster's Third New International Dictionary* 822 (1986))). The court established that this "exclusion to Chapter 95, HTSUS, *encompasses* textile *costumes* that are classifiable as 'wearing apparel' under Chapter 61 or 62." *Id.* at 1357 (emphasis added).

While neither party contends that the apparel at issue fall under the Note 1(e) exception for "fancy dress," Pl.'s Br. 27, Def.'s Br. 28., Defendant does argue that although they "agree that the imported garments are not *expressly* excluded from the 'festive articles' provision by virtue of Note 1(e), the lack of any indication that Heading 9505 was intended to encompass normal articles of apparel should render such garments implicitly excluded." Def.'s Br. 29. However, "[a]bsent a clearer showing of *congressional* intent, we refuse to import *incidental* characteristics of the examples in the Explanatory Notes into the headings of the HTSUS." *Midwest*, 122 F.3d at 1428 (emphasis added). Therefore, the court will not apply unwritten and implicit

assumptions derived from the Explanatory Notes to limit the scope of heading 9505. After examining the images of all the apparel at issue, the court concludes that none of the items satisfies the definition of "fancy dress" set forth in *Rubie's Costume.* Therefore, the apparel items *prima facie* classifiable under heading 9505 are not excluded by Chapter 95 notes.

Furthermore, Section XI notes covering Chapters 61 and 62 constitute binding authority. *See Orlando Food*, 140 F.3d at 1439; *Park B. Smith*, 347 F.3d at 926; Section XI Notes, HTSUS. In relevant part, the notes state that Section XI does not include "articles of chapter 95." Section XI, Note 1(t), HTSUS. Thus, all items *prima facie* classifiable under heading 9505 are excluded by Note 1(t) from headings 6110 and 6206.

## CONCLUSION

In sum, Customs correctly classified item E08326 (CAT NIP 3/4 SLV. PULLOVER) under subheading 6110.90.9090, item K083302 (CATWALK SWEATER) under subheading 6110.90.9042, HTSUS, and item FX83401 (Fraidy Cat Shirt) under subheading 6206.30.3040, HTSUS. *See* 28 U.S.C. § 2639(a)(1). Further, items E093302 (Oh Xmas Tree), E093309 (Silent Night Cardigan), E093309W (Silent Night Cardigan), E093100 (Silent Night Shell), E093100W (Silent Night Shell), and E093215 (Angel) are classified under subheading 9505.10.5020, HTSUS; items K083300 (Halloween Party Sweater), K083301 (Girl's Trick or Treat Cardigan), E08325 (BLACK WIDOW 3/4 SLV. PULLOVER), E08320 (ELVIRA L/S PULLOVER), and E08321 (CASPER L/S PULLOVER) are classified under 9505.90.6000, HTSUS.


August 24, 2006                                              /s/ Judith M. Barzilay
_____                    _____
New York, NY                                                  Judith M. Barzilay, Judge