# United States Court of Appeals for the Federal Circuit

04-1158

BAUER NIKE HOCKEY USA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Susan M. Mathews, Sidley Austin Brown & Wood LLP, of San Francisco, California, argued for plaintiff-appellant. With her on the brief was Richard M. Belanger, of Washington, DC. Of counsel was Robert Torresen, of Washington, DC.

Amy M. Rubin, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, of Washington, DC; and Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Sheryl A. French, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from:   United States Court of International Trade

Judge Donald C. Pogue

# United States Court of Appeals for the Federal Circuit

04-1158

BAUER NIKE HOCKEY USA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  December 20, 2004
_____

Before RADER, SCHALL, and PROST, Circuit Judges.

PROST, Circuit Judge.

Bauer Nike Hockey U.S.A., Inc. ("Bauer") appeals a judgment by the Court of International Trade, which held that the United States Customs Service ("Customs") correctly classified Bauer's imported hockey pants under subheading 6211.33.00 of the Harmonized Tariff Schedule of the United States ("HTSUS").  Bauer Nike Hockey USA, Inc. v. United States, 305 F. Supp. 2d 1345 (Ct. Int'l Trade 2003).  Sports clothing classified under subheading 6211.33.00 carried with it duty rates of slightly above 16% ad valorem from 1998 through 2000.  Id. at 1347.  Bauer claims that its merchandise should have been classified as ice-hockey equipment under subheading 9506.99.25, which was duty free during the relevant import years.  Id.  For the reasons that follow, we reverse the Court of International Trade's judgment affirming Customs' classification,

and hold that Bauer's ice-hockey pants are most appropriately classified under subheading 9506.99.25.

## I. BACKGROUND

The merchandise at issue consists of items known as "hockey pants" or "ice-hockey pants."[1] They are constructed of two primary components: an exterior nylon or polyester textile "shell" and an interior assembly of hard nylon plastic guards and soft polyurethane, polyethylene, or polyester foam padding attached to a belt. Id. at 1348. The internal guards, pads, and belt collectively comprise about 80% of the total weight of the hockey pants. Id. The hockey pants help protect the wearer from injury by absorbing and deflecting blows, collisions, and flying objects in areas where serious injury may occur from playing hockey, including the lower spine, kidneys, tail bone, ribs and lower abdomen, and hips. See id. In addition to their protective function, the pants were designed to provide comfort, fit, and ventilation to the wearer while playing hockey. Id. It is undisputed that these pants were specially designed and intended for use only while playing ice hockey.

In Headquarters Ruling 962072, Customs classified the hockey pants as garments of man-made fibers under subheading 6211.33.00 of Chapter 62.[2] It examined two styles of Bauer's hockey pants. In Bauer's "True Fit" style of hockey pants, the padding and belt are permanently attached to the textile component of the

---

[1]    The items in question are sold under Bauer model numbers HP88, HP100, HP500, HP1000, HP3000, and HP5000. Bauer, 305 F. Supp. 2d at 1347.

[2]    The pertinent parts of Chapter 62 of the HTSUS read as follows:
6211 Track suits, ski-suits and swimwear; other garments:
* * *
6211.33.00 Of man-made fibers.

pants. Customs found the True Fit style pants to be "sports clothing" classifiable as a garment under Heading 6211. In the second style examined, the internal belt and padding in the front, around the thigh, and around the waist are removable from the shell or pants, which also had some sewn-in pads. As for these hockey pants with removable belt, Customs found that although the belt with pads was classifiable as ice-hockey equipment under subheading 9506.99.25,[3] the textile shell of the pants was classifiable under subheading 6211.33.00. Because Customs found these other hockey pants qualified as composite goods, it analyzed, pursuant to General Rule of Interpretation ("GRI") 3(b), which material or component imparted the essential character to the goods. Customs determined that the textile shell "gives the article its form, covers the lower portion of the body, holds the pads in place, and itself provides some protection to the player." From its findings concerning the textile shell, Customs concluded that the goods in question were most appropriately classified under Heading 6211. Bauer challenged Customs' ruling before the Court of International Trade. Based on its analysis of the exception found in Note 1(e)[4] to Chapter 95 and its understanding of what constituted "sports equipment" within that chapter, the Court of International

---

[3]    The pertinent parts of Chapter 95 of the HTSUS read as follows:
9506  Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof
* * *
9506.99  Other
* * *
9506.99.25   Ice-hockey and field-hockey articles and equipment, except balls, and parts and accessories thereof.

[4]    Note 1(e) excludes from Chapter 95 "sports clothing . . . of textiles, of chapter 61 or 62."

Trade concluded that Customs correctly classified the hockey pants and granted Customs' motion for summary judgment while denying Bauer's cross-motion for summary judgment. Id. at 1358-59. Bauer timely appealed the Court of International Trade's judgment and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

### A. Standard of review

Deciding whether imported merchandise has been properly classified under the tariff provisions is a question of law over which this court exercises complete and independent review. Pillowtex Corp. v. United States, 171 F.3d 1370, 1373 (Fed. Cir. 1999). Resolution of that issue involves a two-step process. Id. First, the court must construe the disputed terms in the relevant tariff provisions. Id. Second, the court must determine which tariff provision, as correctly construed, most properly encompasses the merchandise at issue. Id. Despite our de novo review of interpretations of tariff provisions, we give deference to the classification decisions by Customs interpreting provisions of the HTSUS in proportion to their "power to persuade" under the principles of Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). See United Techs. Corp. v. United States, 315 F.3d 1320, 1322 (Fed. Cir. 2003).

### B. General rules of classification

The proper classification of merchandise is governed generally by the GRI to the HTSUS. Boen Hardwood Flooring, Inc. v. United States, 357 F.3d 1262, 1264 (Fed. Cir. 2004). The first step in analyzing the classification issue is to determine the applicable heading, if possible, by looking to the terms of the headings and section or chapter notes, in accordance with GRI 1. Orlando Food Corp. v. United States, 140

F.3d 1437, 1440 (Fed. Cir. 1998). Provided that the product is classifiable under a heading, a court must then look to the subheadings to find the correct classification of the merchandise in question. Absent contrary definitions in the HTSUS or legislative history, we construe the terms used in the headings and subheadings according to their "common and popular meaning," which may be drawn from our "own understanding, dictionaries and other reliable sources." Medline Indus., Inc. v. United States, 62 F.3d 1407, 1409 (Fed. Cir. 1995). In addition, we may look to the Explanatory Notes accompanying a tariff subheading as a persuasive, but not binding, interpretative guide. Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994).

## C. Analysis

Bauer disputes whether its hockey pants may be classified under Chapter 62, subheading 6211.33.00, which is directed to garments of man-made fiber, and urges that its pants should have been classified under Chapter 95, subheading 9506.99.25, which is directed, with certain exclusions, to ice hockey and field hockey articles and equipment.

### 1.

After reviewing case law, a previous Customs ruling, and definitions from a dictionary, the Court of International Trade construed the term "equipment" in subheading 9506.99.25 to mean "equipment essential to the play of the game, sport, or athletic activity." Bauer, 305 F. Supp. 2d at 1356-57. Because Bauer conceded that it is possible to engage in ice hockey without hockey pants, the Court of International Trade rejected Bauer's argument that the subject merchandise may be classified as hockey "equipment" under 9506.99.25. Id. at 1357.

We disagree with the Court of International Trade's reading of the material it reviewed to reach its conclusion. The Court of International Trade suggested that we held in Rollerblade, Inc. v. United States, 282 F.3d 1349 (Fed. Cir. 2002), that the term "equipment" meant only articles that are indispensable to the relevant sport or athletic activity. Bauer, 305 F. Supp. 2d at 1356. Contrary to the Court of International Trade's perception, we acknowledged only that the "definition offered for 'equipment' includes those articles that are necessary and specifically designed for use in athletics and other sports." Rollerblade, 282 F.3d at 1354. Because we did not use the word "only" immediately following "includes" in Rollerblade, we gave no opinion whether items that are not necessary but are specially designed for use in athletics or other sports constitute "equipment." The Court of International Trade also attempted to draw support from a Customs ruling, which concluded that the term equipment "includes the requisites needed in connection with the play of sports and athletics, that being the equipment essential to the play of the game, sport, or athletic activity." Bauer, 305 F. Supp. 2d at 1356 (emphasis added by the Court of International Trade) (citing NY D85049 (Dec. 14, 1998)). Again, the Court of International Trade read in the word "only" immediately following the word "includes" when there appears to be no basis for limiting sports "equipment" to only sports "requisites." As for dictionary definitions, the Court of International Trade quoted Webster's Third New International Dictionary ("Webster's"), which defined "equipment" to mean "the equipping of a person or thing" and "equip" as "to provide with what is necessary, useful or appropriate." Webster's 768 (1993). This definition provides no support for the Court of International Trade's conclusion that an item must be necessary to be equipment because the definition uses

the disjunctive, "or," in the definition of "equip," not the conjunctive, "and." Because it is undisputed that Bauer's pants were specially designed and intended for use only while playing ice hockey, we hold, contrary to the Court of International Trade's conclusion, that the pants are prima facie classifiable under subheading 9506.99.25 as ice-hockey equipment.

2.

In support of the Court of International Trade's and Customs' classification, the government insists that Bauer's ice-hockey pants are classifiable under subheading 6211.33.00. The government argues that U.S. Note 12(a) associated with temporary subheading 9902.62.01, now expired, lends support for treating Bauer's hockey pants as "sports clothing" classifiable under Chapter 62.[5] This note permitted ice-hockey pants to enter the United States duty free for a period after changing from the Tariff Schedules of the United States ("TSUS") to the HTSUS. Neither the Court of International Trade nor Customs cites any authority to suggest that we may expand the use of U.S. Note 12(a) for purposes other than the one specified, i.e., "[f]or purposes of subheading 9902.62.01." Moreover, neither of them, nor for that matter this expired note, supply any persuasive reason to accept the proposition that the TSUS necessarily classified all ice-hockey pants as equipment, or that the HTSUS re-classified the same articles as clothing. The HTSUS could have easily contained a provision specifically classifying ice-hockey pants as clothing of Chapter 61 or 62 under the HTSUS upon

---

[5] Note 12(a) provided:
For purposes of subheading 9902.62.01 – (1) The term "sports clothing" refers to: (A) ice hockey pants, provided for in subheadings 6113.00, 6114.30, 6210.40, 6210.50, 6211.33, or 6211.43 . . . .
(Emphasis added).

expiration of the note if that was Congress's intent. Absent such a provision or other indication of Congress's intent in the legislative history, we are not persuaded that Congress intended a result contrary to the proper application of the headings and subheadings of Chapters 95 and 62. The government makes a number of other arguments as to why the subject merchandise is classifiable under subheading 6211.33.00. Even if we assumed that the government is correct, we would nevertheless conclude that the subject merchandise is most properly classified as ice-hockey equipment under subheading 9506.99.25.

When goods are prima facie classifiable under two or more headings, we are to follow the guidelines set forth by GRI 3. GRI 3(a) states that the "heading which provides the most specific description shall be preferred to headings providing a more general description." "Under this rule of relative specificity, a court look[s] to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." Len-Ron Mfg. Co., Inc. v. United States, 334 F.3d 1304, 1313 (Fed. Cir. 2003) (internal quotes omitted). Assuming the headings do not help narrow the selection, we then look to the subheading which provides the more specific description. Id.

In this instance, Customs erroneously relied on the "essential character" test from GRI 3(b) to determine the appropriate classification of the hockey pants that had the removable padding and plastic plates. To properly reach GRI 3(b), we must first determine whether, under GRI 3(a), the "headings each refer to part only of the materials or substances contained" in the merchandise. If we agree that the headings each refer to "part only" of the materials contained in the hockey pants, "those headings

are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods." GRI 3(a). Neither the Court of International Trade nor Customs, however, provide any persuasive reason to justify viewing the ice-hockey equipment subheading as referring only to the padding and plates in the subject merchandise when the textile component plays an integral element in constituting the equipment.

We find that the "rule of specificity" under GRI 3(a) adequately resolves the proper classification of the subject merchandise.[6] We begin by comparing the specificity of Heading 6211, which encompasses "Track suits, ski-suits, and swim-wear; other garments," to Heading 9506, which encompasses "Articles and equipment for general physical exercise, gymnastics, athletics, other sports." In both headings, we must look to the basket provision, "other garments" and articles and equipment for "other sports." Neither provision, however, is more specific than the other. Accordingly,

---

[6] Assuming the subject merchandise is prima facie classifiable under both Chapters 62 and 95, each chapter has associated with it an exclusionary note that would ordinarily preclude classification of the subject merchandise under the competing chapter. See Note 1(t) to Section XI (excluding from this section, including Chapter 62, articles of Chapter 95); Note 1(e) to Chapter 95 (excluding "sports clothing . . . of textiles, of chapter 61 or 62"). Under such circumstance, we must evaluate which heading, and if necessary, subheading, provides the more specific description of the merchandise before we examine the exclusionary notes associated with the applicable classification. See Sharp Microelectronics Tech., Inc. v. United States, 122 F.3d 1446, 1450-51 (Fed. Cir. 1997) (noting that exclusionary notes play a complementary role to the rule of relative specificity and finding it improper to rely on an exclusionary section note before applying the rule of relative specificity between competing headings). Resorting to the exclusionary note before applying the rule of specificity, as Customs did in its classification ruling, would yield the somewhat arbitrary result that the subject merchandise could be classified under different chapters based solely on which chapter the analysis began. For instance, if Customs had started with Chapter 95 instead of 62 and properly concluded that the merchandise is classifiable as sports equipment, it would have arrived at a conclusion opposite to that reached in its original ruling, and found the hockey pants classifiable only under Chapter 95.

we look to the subheadings. Subheading 6211.33.00 refers to other garments of "man-made fibers," whereas subheading 9506.99.25 refers to "Ice-hockey and field-hockey articles and equipment, except balls and skates, and parts and accessories thereof." It is clear that "ice-hockey . . . articles and equipment," as provided under subheading 9506.99.25, gives a much more specific description of Bauer's hockey pants than subheading 6211.33.00, which refers quite broadly to other garments of man-made fibers. Having concluded that the subject merchandise is more specifically captured by subheading 9506.99.25 than 6211.33.00, we find Note 1(t) under Section XI, which excludes articles of Chapter 95, leads us to conclude that the merchandise is excluded from classification under Chapter 62. We find no other applicable notes that might otherwise preclude classification of the subject merchandise under subheading 9506.99.25. Accordingly, we must conclude that Bauer's subject merchandise is most appropriately classified under subheading 9506.99.25.

## III. CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of International Trade affirming Customs' classification, and hold that Bauer's subject merchandise must be classified under subheading 9506.99.25.

## REVERSED