# United States Court of Appeals for the Federal Circuit

2008-1342

ARCHER DANIELS MIDLAND COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Lawrence M. Friedman, Barnes, Richardson & Colburn, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were Carolyn D. Amadon, and Shama K. Patari.

Amy M. Rubin, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Jeanne E. Davidson, Director, and Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel was Beth C. Brotman, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Michael K. Tomenga, Neville Peterson LLP, of Washington, DC, for amicus curiae Cargill Nutri-Products, Inc. With him on the brief was Casey K. Richter.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

2008-1342

ARCHER DANIELS MIDLAND COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in consolidated case no. 05-00592, Judge Evan J. Wallach.

_____

DECIDED: March 26, 2009

_____

Before RADER, GAJARSA, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge DYK. Dissenting opinion filed by Circuit Judge GAJARSA.

DYK, Circuit Judge.

In July 2003, Archer Daniels Midland Company ("ADM") imported deodorizer distillate, a residue from the production of edible soybean oil. United States Customs and Border Protection ("Customs") classified the deodorizer distillate under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 3824.90.28 ("[c]hemical products and preparations of the chemical or allied industries . . ., not elsewhere specified or included"), then subject to duty of 7.9% ad valorem. ADM protested, contending, inter alia, that the product should instead have been classified under subheading 3825.90 ("[r]esidual products of the chemical or allied industries, not

elsewhere specified or included"), which is duty-free.  The Court of International Trade agreed with Customs and held that the product should be classified as a chemical product under 3824.90.28.  Archer Daniels Midland Co. v. United States, 559 F. Supp. 2d 1347, 1363-64 (Ct. Int'l Trade 2008).  Because we agree with ADM that deodorizer distillate is a "residual product" properly classified under subheading 3825.90, we reverse and remand.

## BACKGROUND

Undesirable flavors and odors can be removed from edible soybean oil through high-temperature high-vacuum steam distillation.  In addition to palatable soybean oil, an output of the distillation process is deodorizer distillate ("DOD"), a chemically complex yellowish- to reddish-brown solid with a foul odor.  DOD is a commercially valuable substance primarily used as a feedstock for the recovery of tocopherols (used to produce natural Vitamin E) and phytosterols (used to produce cholesterol-reducing nutritional additives).  The parties agree that DOD contains mainly organic constituents and contains at least 5% by weight aromatic or modified aromatic substances.  The chemical composition of DOD is not formally specified, however, and the content of a particular sample of DOD varies with the source oil and distillation conditions.  Unlike many chemical products, DOD is not listed by name in a specific heading or subheading of the HTSUS.

ADM imported the DOD at issue in this case.  Customs classified ADM's entries of DOD under HTSUS subheading 3824.90.28, a "basket" or catchall provision applicable to "[c]hemical products and preparations of the chemical or allied

industries . . ., not elsewhere specified or included: Other . . .: Other."[1]  See United States Customs & Border Protection, Headquarters Ruling No. 967,288 (Mar. 10, 2005), available at 2005 WL 2646568.

ADM thereafter filed suit in the Court of International Trade under 28 U.S.C. § 2632, seeking reliquidation of the entries and calculation of duties under its proposed headings.  ADM did not dispute that DOD fell under subheading 3824.90.28, but urged that other headings were more specific and that, under the rule of relative specificity, the product should be classified under one of the other headings.  Primarily, ADM maintained that DOD is encompassed by heading 3825, a duty-free heading added to the HTSUS in 2002 applicable to "[r]esidual products of the chemical or allied industries, not elsewhere specified or included," as well as various types of "wastes."[2]  ADM argued that DOD is the unavoidable "residual product" remaining after the distillation of

---

[1]    The full subheading provides:

3824: Prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included:

    90:    Other: Mixtures containing 5 percent or more by weight of one or more aromatic or modified aromatic substances:

        28:    Other.

(emphases added).

[2]    The pertinent subheadings (61 and 90) of HTSUS heading 3825 provide:

3825: Residual products of the chemical or allied industries, not elsewhere specified or included; municipal waste; sewage sludge; other wastes specified in note 6 to this chapter:

    61:    Other wastes from the chemical or allied industries: Mainly containing organic constituents.

    90:    Other.

(emphasis added).

edible soybean oil, and is therefore properly classified under subheading 3825.90 ("Residual products of the chemical or allied industries, not elsewhere specified or included . . .: Other"). Alternatively, ADM argued that DOD is a duty-free waste product under subheading 3825.61 (". . . [o]ther wastes from the chemical or allied industries: Mainly containing organic constituents") or a "vegetable pitch" subject to 0.1% duty under HTSUS heading 3807.[3] For various reasons the government argued that these alternative headings were inapplicable. The parties filed cross-motions for summary judgment.

On April 11, 2008, the trade court granted the government's motion for summary judgment. Archer Daniels, 559 F. Supp. 2d at 1363-64. It rejected ADM's argument that DOD should be classified as a "residual product" under heading 3825. Id. Relying mainly on the Explanatory Note to subheading 3825.90, which at the time of the entries listed four specific substances (alkaline iron oxide, residues from the manufacture of antibiotics, ammoniacal gas liquors, and spent oxide), the court held that 3825.90 was not a true "basket" provision and that "there is no indication that . . . residual products [other than those listed in the Explanatory Note] were meant to be included in this provision." Id. at 1361. Concluding that "the subheading was intended to be limited only to the listed substances [in the Explanatory Note]," the court found that "DOD is not properly classified as a residual product under subheading 3825.90." Id. Relying on E.T. Horn Co. v. United States, 945 F.2d 1540, 1543 (Fed. Cir. 1991), the trade court

---

[3]    HTSUS heading 3807 provides:

Wood tar; wood tar oils; wood creosote; wood naphtha; vegetable pitch; brewers' pitch and similar preparations based on rosin, resin acids or on vegetable pitch.

additionally held that DOD could not be classified as a waste product under subheading 3825.61 because it was not a manufactured product that had become "useless." Archer Daniels, 559 F. Supp. 2d at 1359-60. Finally, the court held that DOD did not fall within the common and commercial meaning of "vegetable pitch" under heading 3807 and that ADM had not shown a different commercial meaning of the term existed that might encompass DOD. Id. at 1355. The court therefore granted the government's motion for summary judgment and affirmed Customs's classification of DOD as a chemical product under HTSUS subheading 3824.90.28.

ADM timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The sole issue on appeal is the proper classification of DOD. The relevant facts are not in dispute, and the proper interpretation of the headings and subheadings of the HTSUS is a question of law that we review without deference. Drygel, Inc. v. United States, 541 F.3d 1129, 1133 (Fed. Cir. 2008).

I

We begin by considering whether DOD is prima facie classifiable in heading 3807 as a "vegetable pitch." Although it is undisputed that DOD is not commercially traded or known under the name "vegetable pitch,"[4] ADM nevertheless contends that DOD was within the term "vegetable pitch" as used in heading 3807. "When, as here, 'a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is

---

[4] See Archer Daniels, 559 F. Supp. 2d at 1355 ("[T]here is no indication from [ADM]'s submitted materials, dictionary definitions or any other readily available information that DOD is commercially or commonly known, sold or traded as 'vegetable pitch.'").

its common or dictionary meaning in the absence of evidence to the contrary.'" Airflow Tech., Inc. v. United States, 524 F.3d 1287, 1291 (Fed. Cir. 2008) (quoting Russell Stadelman & Co. v. United States, 242 F.3d 1044,1048 (Fed. Cir. 2001)).

Although dictionaries do not define "vegetable pitch," the trade court determined, and we agree, that "vegetable pitch" is simply pitch derived from a vegetable base. Archer Daniels, 559 F. Supp. 2d at 1354. The Court of International Trade relied on a the dictionary definition of the term "pitch" as "'[a]ny of various thick, dark, sticky substances obtained from the distillation residue of coal tar, wood tar, or petroleum and used for waterproofing, roofing, caulking, and paving.'" Id. (quoting The American Heritage Dictionary 1380 (3d ed. 1996)); see also Webster's Unabridged Dictionary 1476 (Random House 2d ed. 1998) (defining "pitch" as "any of various dark, tenacious, and viscous substances for caulking and paving, consisting of the residue of the distillation of coal tar or wood tar"). The trade court considered several additional dictionary definitions, each of which specifically mentioned as part of the proffered description that the substance being defined was used for waterproofing, caulking, varnishes, or similar applications. Archer Daniels, 559 F. Supp. 2d at 1354. The court concluded that vegetable pitch is defined by such uses, and that DOD is not within the definition because it is not used for these or similar purposes. Id. at 1355.

On appeal, ADM contends that ordinarily "a use limitation should not be read into an eo nomine provision unless the name itself inherently suggests a type of use." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999). But as several of the dictionary definitions indicate, this case presents the unusual situation where the ordinary meaning of the term "pitch" may inherently suggest a type of use. The parties

also disagree as to whether the meaning of the term "pitch" is confined to substances useful in paving, waterproofing, or the like. While some definitions suggest that in ordinary usage pitch is defined by such applications,[5] ADM is correct that another definition merely states that pitch is "chiefly" used in varnishes or waterproofing,[6] suggesting that the term is not in fact defined by its characteristic uses. The dictionary definitions of the term "pitch" are thus unclear as to whether the ordinary meaning of that term encompasses only products having such characteristics, and the heading language is thus susceptible to more than one interpretation.

To resolve this ambiguity the trade court properly turned to the available sources, including the Explanatory Notes, to clarify the intended scope of the heading. See, e.g., Degussa Corp. v. United States, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (noting that Explanatory Notes, while not legally binding, may be helpful in construing a tariff provision). Explanatory Note 38.07(c) makes clear that "vegetable pitches" for purposes of heading 3807 are those pitches that "are used, according to their type, for caulking ships, waterproof-coating of woven fabrics, impregnating woods, preparing anti-rust

---

[5]    E.g., Webster's Unabridged Dictionary 1476 (Random House 2d ed. 1998) (defining "pitch" as "any of various dark, tenacious, and viscous substances for caulking and paving"); American Heritage Dictionary 1380 (3d ed. 1996) (defining "pitch" as "[a]ny of various thick, dark, sticky substances obtained from the distillation residue of coal tar, wood tar, or petroleum and used for waterproofing, roofing, caulking, and paving").

[6]    E.g., Webster's Third New International Dictionary 1724 (Merriam-Webster 2002) (noting that "pitch" is "used chiefly in varnishes and paints and in floor coverings" (emphasis added)).

coatings, as binding materials, etc."[7]  DOD, while sharing some physical characteristics with vegetable pitch, is not characteristically used or useful for purposes that "resemble caulking, waterproofing, or other commonly described 'pitch'" applications.  Archer Daniels, 559 F. Supp. 2d at 1355.  Nor does the presence of the term "etc." following the uses listed in the Explanatory Note suggest that heading 3807 is broad enough to encompass DOD.  As we have previously held in interpreting the HTSUS, "[i]t is well settled that when a list of items is followed by a general word or phrase, the rule of ejusdem generis is used to determine the scope of the general word or phrase." Avenues in Leather, Inc. v. United States, 423 F.3d 1326, 1332 (Fed. Cir. 2005).  Here, the principle limits the additional uses included by the general phrase "etc." to others of the types listed, such as caulking, waterproofing, and similar functions.  Applications of this type are not among the uses of DOD disclosed by the record.  The Court of

---

[7]    In full, Explanatory Note 38.07(C) is as follows:

(C) **Vegetable pitch**.

These are residues of the distillation or other treatment of vegetable materials.  They include:

(1)   **Wood pitch** (wood tar pitch), a residue of the distillation of wood tar.

(2)   **Rosin pitch**, a residue of the preparation of rosin spirit and rosin oil by distillation of rosin.

(3)   **Sulphate pitch**, a residue after the distillation of tall oil, etc.

These pitches are usually blackish-brown, reddish-brown or yellowish-brown.  They generally soften with the heat of the hand.  They are used, according to their type, for caulking ships, waterproof-coating of woven fabrics, impregnating woods, preparing anti-rust coatings, as binding materials, etc.

World Customs Org., Harmonized Commodity Description & Coding Sys., Explanatory Notes 679 (3d ed. 2002) ("2002 Explanatory Notes") (emphases in original).

International Trade did not err in concluding that DOD is not classifiable as "vegetable pitch" under heading 3807.

II

Next, we consider whether DOD is prima facie classifiable in heading 3825 as a "residual product" of the chemical or allied industries. As the term is undefined in the HTSUS or the legislative history, we look to the ordinary meaning of "residual products." Airflow Tech., 524 F.3d at 1291.

There is no question but that deodorizer distillate falls within the ordinary meaning of the term "residual products." The dictionary definition of "residual" is "of, relating to, or constituting a residue," "remaining after a part is taken," "left as a residuum," or, particularly pertinent here, "a product or substance remaining over (as at the end of a chemical process, distillation, extraction)." Webster's Third New International Dictionary 1931 (Merriam-Webster 2002); accord Webster's Unabridged Dictionary 1638 (Random House 2d ed. 1998). The common thread running through these definitions is that a "residual" product is a product that remains after something is taken out. Deodorizer distillate is the residuum of the soybean oil manufacturing process; it is a chemically undefined solid remaining after deodorized soybean oil is taken from feedstock oil. Archer Daniels, 559 F. Supp. 2d at 1349 ("DOD is a residue produced during the process of refining soybean oil . . . ."). As a product consisting of the unavoidable residue that remains after unrefined soybean oil is distilled, it is within the ordinary meaning of the term "residual products."

The government does not seriously dispute that DOD is a "residual product" within the ordinary meaning of that term.[8] This case does not present any of the difficult definitional issues potentially raised by the term "residual products." Instead, the government offers several legal theories why the term "residual products" in heading 3825 should not be given its ordinary meaning, and instead should be construed narrowly so as not to encompass DOD.

First, the government maintains that the Court of International Trade correctly concluded that the only "residual products of the chemical or allied industries" actually covered by subheading 3825.90 are the four (now five) products expressly listed in the

---

[8] Like ADM, in its brief the government characterizes DOD as the substance resulting from the "process that removes undesirable flavors and odors from edible oils by steam stripping." Appellee's Br. 2. In addition, as noted by the Court of International Trade, during the proceedings before that court the government "indicated that it does not dispute th[e] characterization" of DOD as "an unavoidable residue resulting from soybean distillation." Archer Daniels, 559 F. Supp. 2d at 1362 & n.10. Although at oral argument before this court the government for the first time appeared to dispute that DOD is a "residue" because its specific content can be altered by manipulating the soybean oil manufacturing process, it offered no reason why altering the content of a residue during manufacture would somehow result in something other than a "residual product."

Explanatory Note to that subheading.[9]  In its opinion, issued before our decision in

Airflow Technology, 524 F.3d at 1293, the trade court held that "[t]he proper inquiry

is . . . whether the subheading is limited to the substances listed in the accompanying

Explanatory Notes."  Archer Daniels, 559 F. Supp. 2d at 1361.  While the trade court

recognized that the Explanatory Notes are nonbinding, it nevertheless reasoned that

"there is no indication that other residual products were meant to be included in this

---

[9]      In full, Explanatory Note 38.25(A)(1)-(4) provides:

(A) **RESIDUAL PRODUCTS OF THE CHEMICAL OR ALLIED INDUSTRIES, NOT ELSEWHERE SPECIFIED OR INCLUDED**

(1) **Alkaline iron oxide** for the purification of gas (in particular, coal-gas) containing impure ferric oxide, obtained as a by-product from one of the processes of the extraction of aluminium from bauxite. These by-products also contain sodium carbonate, silica, etc.

(2) **Residues from the manufacture of antibiotics** (called "cakes"), with a very low antibiotic content, suitable for use for the preparation of compound animal feeds.

(3) **Ammoniacal gas liquors**, produced as an aqueous portion settling out from the crude coal tar condensed from coal gas, and also by the absorption of ammonia in the waters used for washing coal. They are usually concentrated before transportation. They are brownish liquids and are used for the manufacture of ammonium salts (particularly ammonium sulphate) and purified and concentrated aqueous solutions of ammonia gas.

(4) **Spent oxide**. After the water-extraction of the greater part of its ammonia content, coal gas is chemically purified by passing it through a mass usually composed of bog iron ore or of hydrated iron(III)oxide, sawdust and calcium sulphate. This mass removes from the gas certain impurities (hydrogen sulphide, hydrocyanic acid, etc.). When spent, it contains a mixture of sulphur, Prussian blue, a small quantity of ammonium salts and other substances, and is known as spent oxide. It is usually in the form of powder or granules, greenish to brownish in colour, with a disagreeable odour, and is mainly used as a source of sulphur and cyanides (particularly Prussian blue) and as a fertiliser or an insecticide.

2002 Explanatory Notes 704 (emphases in original).  A fifth item, residues from processing power plant combustion off-gasses, was added in 2007.  See World Customs Org., Harmonized Commodity Description & Coding Sys., Explanatory Notes 704 (4th ed. 2007).

provision" and that the "not elsewhere specified or included" language of the heading did not create a true basket provision. Id. Because DOD was not listed in the Explanatory Notes, the court held that it was not classifiable under "residual products" in 3825.90.

Although the government is correct that the Explanatory Note does not contain expansive language expressly indicating that the four named products are exemplars, there is also a notable absence of language in the Explanatory Note confining the list to the enumerated items or suggesting the list is exhaustive. Moreover, even if the Explanatory Note did contain express language purporting to make it a complete and exhaustive list of all "residual products of the chemical or allied industries, not elsewhere specified or included," it would not serve to exclude DOD from the scope of subheading 3825.90.

We recently considered (and rejected) a similar argument in Airflow Technology, 524 F.3d at 1293. The question in Airflow Technology concerned filter cloth used to separate dust from air, which Customs classified under subheading 5911.40.00 as "straining cloth." Id. at 1289. We held that the term "straining cloth" was limited to cloth for straining solids from liquids, not solids from gasses. Also, we held that an Explanatory Note stating that the heading covered cloth used "for gas cleaning or similar technical applications in industrial dust collecting systems" could not change the clear meaning of the term "straining cloth" in the heading. Id. at 1292-93.

Although we recognized that the Explanatory Notes may be generally useful as guides to the scope of unclear HTSUS headings, they "'are not legally binding.'" Id. at 1293 (quoting Degussa Corp., 508 F.3d at 1047); see also Michael Simon Design, Inc.

v. United States, 501 F.3d 1303, 1307 (Fed. Cir. 2007). Thus, "when the language of the tariff provision is unambiguous and the Explanatory Notes contradictory, we do not afford the Explanatory Notes any weight." Airflow Tech., 524 F.3d at 1293 (quotation and alteration marks omitted).

The reasoning of Airflow Technology is equally applicable here. Because "residual products" cannot reasonably be construed to be limited to the four or five products listed in the Explanatory Note, we reject the government's argument that the Explanatory Note may be given controlling weight and used to narrow the ordinary meaning of the term "residual products." See Airflow Tech., 524 F.3d at 1293; Michael Simon Design, 501 F.3d at 1307. Subheading 3825.90 is a basket provision not limited to those four or five products. See Rollerblade, Inc. v. United States, 282 F.3d 1349, 1354 (Fed. Cir. 2002).[10]

Next, the government contends that DOD cannot be within the meaning of the term "residual products" in heading 3825 because it is also classifiable under "chemical products," specifically as a "by-product" mentioned in the Explanatory Note to heading

---

[10] The government also urges that the Court of International Trade should have deferred, under Skidmore v. Swift & Co., 323 U.S. 134 (1944), to Customs's determination in Headquarters Ruling No. 967,288 that heading 3825 applies to only environmentally sensitive or hazardous substances. The trade court correctly rejected this argument, noting that neither the language of the HTSUS heading nor even the relevant Explanatory Notes suggest such a limitation. Archer Daniels, 559 F. Supp. 2d at 1357-59.

3824.[11]  In the government's view, the two headings are mutually exclusive and "cannot . . . encompass any of the same products."  Def.-Appellee's Br. 24.

This argument is without merit.  We have rejected the government's argument that "residual products" in heading 3825 is limited to the four (or five) substances listed in the Explanatory Note to that heading.  The government is bereft of any other theory as to how the language of the two headings could possibly be construed to be mutually exclusive, short of construing the term "chemical products" in heading 3824 to exclude "residual products."  But that theory does not help the government at all, since the result would be to require classification of the products in question under heading 3825 rather than under heading 3824.

Moreover, there is no indication that headings 3824 and 3825 are in fact mutually exclusive.  The foundation of the government's argument is that until January 1, 2002, the "residual products" language now contained in heading 3825 was a part of former heading 3824.[12]  The government contends that "each clause of the former Heading

---

[11]  Although heading 3824 itself does not use the term "by-product," the parties do not dispute that "chemical products and preparations" includes chemical "by-products."  Explanatory Note 38.24(B) confirms that the "chemical products" language of heading 3824 includes products of undefined chemical composition "whether they are obtained as by-products of the manufacture of other substances . . . or prepared directly."  2002 Explanatory Notes 698 (emphasis added).  The government contends that the Court of International Trade correctly viewed "residual products" and "by-products" as synonymous.  See Webster's Third New International Dictionary 1932 (Merriam-Webster 2002) (offering "by-product" as a definition for "residual product").

[12]  The 2001 (Supp. 1) version of HTSUS heading 3824 provided:

3824: Prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included; residual products of the chemical or allied industries, not elsewhere specified or included.

(emphases added).

3824 had its own independent intended scope which did not overlap with the scope of any of the other clauses in that heading." Def.-Appellee's Br. 23. Because prior to 2002 DOD was classifiable as a by-product under the "chemical products and preparations" clause of former heading 3824, the government argues, it cannot also have been within the "residual products" clause of former heading 3824 that later became current heading 3825.

We are not persuaded by the government's argument that the "chemical products" and "residual products" clauses of former heading 3284 were necessarily mutually exclusive. To the contrary, we have held repeatedly that goods may be prima facie classifiable under multiple subheadings within a single heading. See, e.g., Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1312-13 (Fed. Cir. 2003); Pillowtex Corp. v. United States, 171 F.3d 1370, 1375-76 (Fed. Cir. 1999). There is no reason why this could not have been equally true with regard to former heading 3824.

Nor do we agree that the 2002 separation of the "chemical products" and "residual products" clauses into headings 3824 and 3825, respectively, indicates that there can now be no overlap between the two. As the government itself acknowledges, "in general tariff provisions may overlap." Def.-Appellee's Br. 25 n.20. Indeed, the General Rules of Interpretation ("GRI"), which "govern the classification of imported goods within the HTSUS," specifically contemplate that situations will arise under the tariff schedule where goods may be prima facie described by more than one heading. Home Depot U.S.A., Inc. v. United States, 491 F.3d 1334, 1336 (Fed. Cir. 2007).

The government directs us to no legislative history supporting its contention that the provisions are specially intended not to overlap, nor to any indication that the

President, in issuing the proclamation which added heading 3825 to the HTSUS, concluded there could be no overlap between the provisions. See Proclamation No. 7515, 66 Fed. Reg. 66,549, 66,602-03 (Dec. 18, 2001). At bottom, the government offers no compelling reason why current headings 3824 and 3825 on their face "cannot . . . encompass any of the same products." Thus, we decline to read the history of headings 3824 and 3825 as sufficient to narrow the ordinary meaning of "residual products" in heading 3825.

In summary, we agree with ADM that DOD, as a product consisting of the residue remaining after the deodorization of edible soybean oil, is prima facie classifiable under 3825.90 as a residual product.

III

Given that entries of DOD are prima facie classifiable both under heading 3824 as "chemical products and preparations of the chemical or allied industries . . . not elsewhere specified or included," and under heading 3825 as "[r]esidual products of the chemical or allied industries, not elsewhere specified or included," the question is which is the more appropriate classification. To resolve this question we turn to GRI 3(a), which provides that when a product is prima facie classifiable under more than one heading, "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a) (2002); see Home Depot, 491 F.3d at 1336; Bauer Nike Hockey USA, Inc. v. United States, 393 F.3d 1246, 1251-52 (Fed. Cir. 2004).

In this case, it is clear that the term "residual products" used in heading 3825 is a more specific term than the general "chemical products" described in heading 3824.

See <u>Orlando Food Corp. v. United States</u>, 140 F.3d 1437, 1440 (Fed. Cir. 1998) ("[W]hen determining which heading is the more specific, and hence the more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings."). "Chemical products" in heading 3824 is a broad term. "Residual products" comprise a smaller and more specifically defined subset of chemical products. The government offered no reason why GRI 3 would not operate to place DOD in heading 3825 if both headings were applicable.

Thus, heading 3825, as the more specific heading, is preferred under GRI 3(a). We therefore conclude that the Court of International Trade erred in denying ADM's motion for summary judgment and granting summary judgment to the government.

CONCLUSION

Because there are no genuine issues of material fact with respect to whether DOD is properly classified under HSTUS subheading 3825.90, rather than under subheading 3824.90.28, we reverse the Court of International Trade's grant of the government's motion for summary judgment and order that on remand summary judgment be granted to ADM. In light of our disposition of this case, we need not address ADM's arguments concerning classification of DOD as "waste" under heading 3825.61.

REVERSED AND REMANDED

COSTS

Each party shall bear its costs.

# United States Court of Appeals for the Federal Circuit

2008-1342

ARCHER DANIELS MIDLAND COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in consolidated case no. 05-00592, Judge Evan J. Wallach.

GAJARSA, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion. My principal disagreement with the majority is that the terms in Heading 3825 are ambiguous. See Majority Op. at 12–13. This is a typical enigmatic classification case. The product at issue here, DOD, can be classified as a residual product under Heading 3825 only if it is "not elsewhere specified or included." In this case, the majority and ADM note that DOD is classifiable as a chemical product under Heading 3824, but both also contend that DOD is clearly a residual product. That causes a conundrum. If DOD is a chemical product that can be classified under Heading 3824, it is not a residual product that is "not otherwise specified or included" and should not be classified under Heading 3825. Unfortunately, it is not so simplistic because Heading 3824 also contains the language of a basket provision such that DOD is classifiable under Heading 3824 only if it is a chemical product that is "not elsewhere specified or included."

As noted in the majority opinion, the chemical product and residual product categories relevant here were previously both included under Heading 3824. Heading 3824 was then amended to remove the residual product category and place it under Heading 3825. We must presume that the amendment intended to remove certain types of products from Heading 3824 and place them under Heading 3825, but it is unclear what products were intended to be removed. The question then posed is, what exactly is a residual product that cannot be classified as a chemical product?

Because of this ambiguity, it is proper and helpful to consult the Explanatory Notes ("ENs") accompanying Headings 3824 and 3825 to interpret those provisions—particularly in light of the uncertainty caused by the overlap in coverage between Headings 3824 and 3825, the unclear purpose of the amendment, and the fact that the ENs do not contradict the language of the headings. See Degussa Corp. v. United States, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (explaining that the ENs "are not legally binding but may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision"); Airflow Tech., Inc. v. United States, 524 F.3d 1287, 1293 (Fed. Cir. 2008) (explaining that ENs that contradict unambiguous language of the tariff provision will be accorded no weight).

In this case, the ENs are particularly helpful in resolving the ambiguity. The EN for Heading 3825 lists five items that are "residual products of the chemical or allied industries, not elsewhere specified or included": alkaline iron oxide, residues from the manufacture of antibiotics, ammoniacal gas liquors, spent oxide, and residues from the processing of power plant combustion off-gases. In contrast, the relevant EN for the chemical products category under Heading 3824 lists broad categories of

merchandise—not specific products. Although I disagree with the Court of International Trade's determination that the residual products category of Heading 3825 is limited to only those products listed in the EN, I note that ADM failed to establish that DOD is anything like the products listed in that EN. In contrast, the EN accompanying Heading 3824 makes clear that Heading 3824 includes DOD. First, the EN clarifies that by-products, such as DOD, are included in that heading. Second, the EN makes clear that Heading 3824 was intended to cover many products because it lists broad categories of products and includes "[chemical] products whose composition is not chemically defined," such as DOD.

It was ADM's burden to establish that DOD is classifiable under Heading 3825, and for the reasons stated above, I believe ADM failed to meet its burden. In addition, both Customs and the Court of International Trade carefully considered this issue and wrote well-reasoned opinions explaining why DOD is not classifiable under Heading 3825, and I would give Skidmore deference to the portions of those opinions that comport with the analysis articulated above. Thus, I would affirm the decision of the Court of International Trade.