# United States Court of Appeals for the Federal Circuit

---

**RIDDELL, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1384

---

Appeal from the United States Court of International Trade in No. 09-CV-0416 and 07-CV-0413, Senior Judge Judith M. Barzilay.

---

Decided: June 20, 2014

---

DANIEL J. GLUCK, Simon Gluck & Kane LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief were CHRISTOPHER M. KANE and MARIANA DEL RIO KOSTENWEIN.

MARCELLA POWELL, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, of Washington, DC; and AMY M. RUBIN, Acting Assistant Director, International Trade Field Office, of New

York New York.  Of counsel on the brief was MICHAEL W. HEYDRICH, Office of the Assistant Chief Counsel, Interntional Trade Litigation, United States Customs and Border Protection, of New York, New York.

––––––––––––

Before NEWMAN, LOURIE, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Riddell, Inc., challenges the Court of International Trade's upholding of the classification of Riddell's imported football jerseys, pants, and girdles as "articles of apparel" under chapters 61 and 62 of the Harmonized Tariff Schedule of the United States (HTSUS).  *Riddell, Inc. v. United States*, 906 F. Supp. 2d 1355, 1368-69 (Ct. Int'l Trade 2013).  Riddell contends that the United States Customs Service (now United States Customs and Border Protection) should have classified the merchandise as "sports . . . equipment" under subheading 9506.99.20 within chapter 95 of the HTSUS.  We reject Riddell's claim to a chapter 95 classification.  For the jerseys and pants, we affirm the Customs classification under the particular provisions within chapters 61 and 62 that Customs identified.  For the girdles, we conclude, as Customs now agrees, that the proper apparel classification is different from the one Customs initially identified.

BACKGROUND

The nature of Riddell's merchandise is not in dispute.  The jerseys, pants, and girdles that Riddell imported are all designed to be worn, in conjunction with protective pads (having both hard and soft components), during the playing of football.  As imported, though, none of the merchandise contains such protective items.

The pants, made of polyester and spandex, end just below the knee and have elastic leg openings.  They contain four interior pockets to hold protective pads—two

thigh pads and two knee pads. In tandem with a girdle, the pants also help secure three additional pads around a player's waist—two hip pads and one tail pad. The pants are tailored to wear with the protective pads.

The jerseys, made of 100% polyester knit mesh, have v-neck openings and short sleeves with elastic cuffs. The shoulders, chest, and back are cut with just enough extra room to accommodate shoulder pads while holding them snugly to the body. The jerseys have substantial stitching at the shoulders to withstand the impacts common in full-contact football.

The girdles, made of polyester, are worn beneath football pants and extend from the waist to the thigh. They have several internal pockets to hold hip and tail pads. They function, together with the pants, to hold padding in place.

Customs classified all of the football jerseys, pants, and girdles at issue here as articles of apparel under either chapter 61 or chapter 62 of the HTSUS. Riddell filed two protests under 19 U.S.C. § 1514, arguing that the merchandise should have been classified as football equipment under chapter 95 of the HTSUS. Customs denied Riddell's protests. Invoking 28 U.S.C. § 1581(a), Riddell then filed two civil actions in the Court of International Trade to challenge the classifications. Because the actions involved similar merchandise and the same core issue of law, the Court of International Trade consolidated them.

Riddell and the United States filed cross-motions for summary judgment. The parties agreed about the nature of the subject merchandise, but disagreed about the scope of the relevant tariff provisions. Riddell argued that the football jerseys, pants, and girdles are properly classified as football equipment under chapter 95, entitled "Toys, games and sports requisites; parts and accessories there-

of." Specifically, Riddell argued for classification under subheading 9506.99.20, which covers the following:

> 9506. Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof
> * * *
>
> 9506.99. Other:
> * * *
>
> 9506.99.20. Football, soccer and polo articles and equipment, except balls, and parts and accessories thereof

Articles under subheading 9506.99.20 enter the United States duty free.

The government argued that Riddell's football jerseys, pants, and girdles do not fall within the scope of chapter 95 but, as Customs had decided, instead come under chapters 61 and 62, which are entitled, respectively, "Articles of apparel and clothing accessories, knitted or crocheted" and "Articles of apparel and clothing accessories, not knitted or crocheted." Customs classified the football jerseys under subheading 6110.30.30 (which has a 32% duty rate), the football pants under subheading 6114.30.30 (which has a 14.9% duty rate), and the football girdles under subheading 6212.20.00 (which has a 20% duty rate). Those subheadings cover:

> 6110. Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted:
> * * *
>
> 6110.30. Of man-made fibers:
> * * *
>
> 6110.30.30. Other.

\* \* \*

6114.  Other garments, knitted or crocheted:
\* \* \*

6114.30.  Of man-made fibers:
\* \* \*

6114.30.30.  Other.

\* \* \*

6212.  Brassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted:
\* \* \*

6212.20.00.  Girdles and panty-girdles.

On March 20, 2013, the Court of International Trade granted summary judgment in favor of the government, holding that "the subject merchandise does not satisfy the definition of 'football equipment' under subheading 9506.99.20" and, therefore, the items are "properly classified as 'articles of apparel' under chapters 61 and 62." *Riddell*, 906 F. Supp. 2d at 1365, 1368.  The Court of International Trade found, as both parties agreed, that Riddell's football jerseys, pants, and girdles "are composed of textile materials" and "do not come bundled with or otherwise incorporate any form of padding or protective inserts"—the pads being "separate articles entirely." *Id.* at 1366.  Therefore, according to the Court of International Trade, "[e]ven though Riddell's pants, jerseys, and girdles are specifically designed to accommodate various forms of protective padding for playing organized football, this design feature does not change their identity under the HTSUS from 'articles of apparel' to 'sports equipment.'" *Id.*

Riddell timely appealed to this court.  Its primary argument is that its football jerseys, pants, and girdles all constitute football equipment—or parts of or accessories

to such equipment—within the meaning of chapter 95, specifically subheading 9506.99.20. Riddell's secondary argument, with which the government agrees, is that the girdles, if they must be classified as apparel and not football equipment, come under subheading 6114.30.30 rather than, as Customs originally decided, subheading 6212.20.00.

This court has jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the Court of International Trade's grant of summary judgment without deference. *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011). The classification of merchandise under the HTSUS proceeds in two steps. "The first concerns the proper meaning of the tariff provisions, which is a question of law reviewed de novo." *Lemans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011). "The second step concerns whether merchandise falls within a particular heading, which is a question of fact we review only for clear error." *Id.* Where, as here, "the nature of the merchandise is undisputed, the inquiry collapses into a question of law we review de novo." *Id.*

"The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). "The classification of merchandise under the HTSUS is governed by the principles set forth in the [General Rules of Interpretation (GRIs)] and the Additional U.S. Rules of Interpretation." *Id.* We apply the GRIs in numerical order, *see CamelBak*, 649 F.3d at 1364, so that if a particular Rule resolves the classification issue, we do not look to subsequent ones, *see Lemans*, 660 F.3d at 1316.

GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." This case involves textile garments designed to be worn during the playing of football, in conjunction with pads and other articles. We must decide whether these garments are "articles of apparel" under chapters 61 and 62 of the HTSUS or "football . . . equipment" under subheading 9506.99.20 of chapter 95. We have been asked before to make the necessary, if not self-evident, distinction between articles of apparel and sports equipment under the HTSUS. Our precedent, as it has developed, supplies an approach to making the distinction that decides this case.

In *Bauer Nike Hockey USA, Inc. v. United States*, this court addressed the proper classification of pants that not only were "specially designed and intended for use only while playing ice hockey" but, as imported, included "an interior assembly of . . . hard plastic guards and soft . . . foam padding" that collectively accounted for "about 80% of the total weight of the hockey pants." 393 F.3d 1246, 1248 (Fed. Cir. 2004). We assumed without deciding that the merchandise was prima facie classifiable as apparel under chapter 62. *Id.* at 1251. But we concluded that the protection-filled pants fell under heading 9506 as sports equipment, stressing that "it [was] undisputed that Bauer's pants were specially designed and intended for use only while playing ice hockey." *Id.* Because the provisional conclusion from applying GRI 1 was that the protection-filled ice-hockey pants were "*prima facie* classifiable under two or more headings," we turned to another interpretive Rule, namely, GRI 3(a)'s "rule of specificity." We concluded that the merchandise was most specifically described by a provision within heading 9506 and, therefore, properly classified under that heading. *Id.* at 1251-52.

In *Lemans*, we provided further clarification of the definition of "sports equipment" under heading 9506 and

its relation to the apparel classifications. *Lemans* involved motocross jerseys, motocross pants, and motorcycle jackets. *See* 660 F.3d at 1318. We observed that all of the merchandise at issue was "designed exclusively for use in a particular sport," *id.* at 1319, and contained foam padding that accounted for up to 50% of the total weight of the jerseys, pants, or jackets. *See id.* at 1313-14. Nonetheless, we held that the merchandise was prima facie classifiable as apparel, noting that chapters 61 and 62 "do not distinguish between apparel designed for general or specific uses," as indicated by their inclusion of "'track suits, ski-suits[,] and swimwear,'" and the merchandise "does not contain protective or specialized features to the same degree as the 'crash helmets' used by motorcycle and auto racers." *Id.* at 1317.

We then concluded that the merchandise was not prima facie classifiable as sports equipment under heading 9506. Looking at the Explanatory Notes to heading 9506, we noted that the "vast majority of the examples in those notes are items that a user would not wear on his or her body," but instead consist of "articles that are entirely separate from the user," "held by the user in his or her hand," or "are accessories fastened to a user." *Id.* at 1321-22. We noted that there were a "few examples" in the Explanatory Notes of items "that a user actually would wear," but those "are almost exclusively used for protection and would complement, or be worn in addition to, apparel worn for a particular sport." *Id.* at 1322. We concluded that "to the extent 'sports equipment' encompasses articles worn by a user, those articles are not apparel-like and are almost exclusively protective in nature." *Id.* at 1320.

Taken together, *Lemans* and *Bauer* provide a practical, common-sense approach to the problem before us. The strong general rule is that "sports equipment" does not include an article that, as imported, would be understood as clothing, as a garment, based on the predomi-

nance of textile material and the usual predominant function of covering portions of the body. Such garments may of course provide whatever "protection" is inherent in simply covering the skin, *e.g.*, against sun exposure or abrasions. They also may have some features chosen to fit specific activities during which they are intended to be worn, without losing their character as clothing in ordinary understanding. But they would not be "sports equipment" even when designed exclusively for use in a sport. A narrow exception exists for an item that, as imported, contains a character-transforming amount of material not ordinarily found in mere body-covering clothing that functions to provide forms of protection not inherent in common body coverings, *e.g.*, protection against impacts that readily propagate beneath the skin. Importantly for the present case, what would clearly constitute clothing, for lack of the transformative elements that were key in *Bauer*, does not become "sports equipment" just because, after importation, it will be used, even exclusively, in conjunction with non-clothing impact-protecting equipment.

Under this approach, Riddell's football jerseys, pants, and girdles are "articles of apparel" within the meaning of chapters 61 and 62. In *Bauer* we assumed, and in *Lemans* we held, that merchandise containing *some* protective padding still fell within the scope of headings in those chapters. Here, Riddell's merchandise contains no protective padding whatever; instead, the football jerseys, pants, and girdles are "worn on the body and composed entirely of textile material." *Riddell*, 906 F. Supp. 2d at 1368. Riddell's merchandise does "not come bundled with or otherwise incorporate any form of padding or protective inserts." *Id.* at 1366. "The pads are separate articles entirely." *Id.*

That Riddell's merchandise has a specialized use—to be worn along with, and to accommodate, protective pads while playing football—does not make the football jerseys,

pants, and girdles lose their character as "articles of apparel." As we said in *Lemans*, "[t]he fact that articles are specialized or intended for specific purposes, such as for sports, does not alone remove them from the category of apparel." 660 F.3d at 1317. Riddell's merchandise, as imported, has not been so transformed as to lose its character as an item properly described as "apparel." *See CamelBak*, 649 F.3d at 1367-68 (sufficient "change in identity" may remove item from an article-naming provision). Riddell's shirts, pants, and girdles are apparel, whatever they may come to be used with.

Riddell's merchandise does not constitute "football . . . equipment" within the meaning of subheading 9506.99.20. If the apparel in *Lemans*, which contained some protective padding, fell outside heading 9506, then so does Riddell's football apparel, which lacks protective padding. Though "designed exclusively for use in a particular sport," Riddell's merchandise itself is not "almost exclusively used for protection," does not "complement" apparel, and is not "worn in addition to[] apparel." 660 F.3d at 1322. Riddell's merchandise is apparel, used along with protective equipment. And it makes no difference if (as Riddell argues) the football jerseys, pants, and girdles are *required* to play football: a sports organization can require use of what constitutes apparel just as it can require use of non-apparel. For those reasons, Riddell's football jerseys, pants, and girdles are not "equipment" within the scope of heading 9506.

Nor do the items come within that provision as "parts" of or "accessories" to equipment. Note 3 to chapter 95 states: "Subject to [N]ote 1 above, parts and accessories which are suitable for use solely or principally with articles of this chapter are to be classified with those articles." The referenced Note 1 specifically excludes from chapter 95 "[s]ports clothing or fancy dress, of textiles, of chapter 61 or 62." That exclusion encompasses Riddell's football jerseys, pants, and girdles, which are within

chapter 61 or 62. Riddell's merchandise, because it is outside the main category of sports "equipment" and is within an "apparel" classification of chapter 61 or 62, cannot constitute a part of or accessory to sports equipment. Indeed, even when not accompanied by protective pads, Riddell's merchandise "performs its separate function without loss of any of its essential characteristics and, whether separate or joined [to the pads], is complete in itself." *ABB, Inc. v. United States*, 421 F.3d 1274, 1277 (Fed. Cir. 2005). Riddell's football jerseys, pants, and girdles, even apart from padding, perform their function as clothing. For that reason too, they are not parts or accessories under heading 9506.

Having rejected Riddell's invocation of chapter 95, we address Riddell's narrow argument with respect to the football girdles—that if they are "articles of apparel," they should be classified under subheading 6114.30.30 as "[o]ther garments, knitted or crocheted," rather than under subheading 6212.20.00 as "[b]rassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof." The government agrees with this argument, apparently because nothing in the record indicates that Riddell's girdles provide body support, which is the function the government has previously identified as the "essential characteristic" of heading 6212 articles.[1] *Van Dale Indus. v. United States*, 18 C.I.T. 247, 252 (1994); *see also* Customs Ruling HQ 957469 at 6 (Nov. 7, 1995) ("Customs believes that . . . girdles [under heading 6212] are commonly understood to be undergarments

---

[1]    S*ee* Br. of Appellee at 27 (stating that the government "would not object to" classification under subheading 6114.30.30); Oral Argument at 19:02-50 (the government states that, because "these girdles are not used for body support," it does not "dispute [classification under] 6114.30 based on the facts of this case").

which provide support."). We therefore hold that the girdles at issue should be classified under subheading 6114.30.30.

## CONCLUSION

We affirm the Court of International Trade's judgment with respect to the classification of Riddell's football jerseys under subheading 6110.30.30 and of Riddell's football pants under subheading 6114.30.30. We reverse, however, with respect to Riddell's football girdles, which are properly classified under subheading 6114.30.30.

No Costs.

**AFFIRMED IN PART, REVERSED IN PART**